UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEXANDER M. MCHALE and
ASHLEY N. MCHALE,

    Plaintiffs,

v.                                                          Case No: 8:19-cv-707-T-27SPF

CROWN EQUIPMENT CORPORATION,

    Defendant.
_____/

**ORDER**

**BEFORE THE COURT** are Defendant Crown Equipment Corporation's Amended Motion for Final Summary Judgment (Dkt. 98), Plaintiffs' Response (Dkt. 105), and Crown's Reply (Dkt. 109). Upon consideration, Crown's motion is **GRANTED in part** and **DENIED in part**. Summary judgment on Plaintiffs' claim for punitive damages (Count Two) is granted in favor of Crown. Counts One and Three survive.

I.      **BACKGROUND AND UNDISPUTED FACTS**

This products liability action involves an injury Plaintiff Alexander McHale ("McHale") sustained while operating the Crown RC5500, a stand-up forklift designed and manufactured by Defendant Crown Equipment Corporation ("Crown"). (Dkt. 5). During operation of the RC5500, the operator's feet are on a suspended floor, the operator leans against a backrest, the right hand is on a control handle, and the left hand is on a steering tiller knob. (Dkt. 98-2 at p. 3). The operator's left foot holds the brake pedal down, and the service brake is engaged when the foot is lifted. (Id. at pp. 3-4). The operator's compartment has an open entry and exit without a guard door. (Id.).

1

To evaluate whether to include a door as a standard feature on its stand-up forklifts, Crown consulted with independent entities, none of which recommended the addition of a door. (Dkt. 98-3 ¶¶ 25-29); (Dkts. 98-13, 98-14, 98-15, 98-16). Further, the American National Standards Institute's ("ANSI") B56.1 committee[1] has issued a safety standard, providing that

> [t]hese trucks are designed with open operator compartments to permit easy ingress and egress. . . . [W]here possible, in the event of an imminent tipover or off the dock accident, the operator should step off and away from the truck. These actions are intended to reduce the risk of serious injury or death.

(Dkt. 98-3 ¶¶ 1-2, 7); (Dkt. 73-3 at pp. 43-45). The committee rejected two proposals to require stand-up forklifts to include doors. (Dkt. 98-3 ¶ 3); (Dkts. 98-5, 98-6).

The B56.1 standard has been adopted by the Occupational Safety and Health Administration (OSHA), which determined that tip-overs were the leading cause of fatal injuries on forklifts and that an operator during a tip-over "can exit the vehicle by simply stepping backward, . . . should attempt to jump clear of the vehicle, and should be trained accordingly." *See* 29 C.F.R. § 1910.178(a)(2); 63 Fed. Reg. 66245, 66242, 66249; (Dkt. 98-7); (Dkt. 98-8 at p. 3). Additionally, the National Institute for Occupational Safety and Health (NIOSH) issued an Alert titled "Preventing Injuries and Deaths of Workers Who Operate or Work Near Forklifts," warning that operators of stand-up forklifts with "rear-entry access" should "exit from the truck by stepping backward if a lateral tipover occurs." (Dkt. 98-9 at p. 2). No commonly accepted standard in the

---

[1] The ANSI B56.1 committee promulgates the "principal U.S. voluntary industry standards relating to stand-up forklifts." (Dkt. 73-3 at p. 43).

United States recommends the addition of a compartment door as standard equipment on a stand-up forklift, and no manufacturer includes doors as standard equipment. (Dkt. 98-3 ¶¶ 13-17).[2]

To "encourage operators to keep their feet and legs inside the operator compartment," Crown added an entry bar on its stand-up forklifts which, if stepped on, will sound an alarm and slow the forklift to a stop.[3] (Id. ¶ 23). The RC5500 also has warnings instructing the operator to "[k]eep head, arms, hands, legs, and feet within the operator area" and "[s]top truck completely before getting off." (Dkt. 98-10). An operator's manual further warns the operator to "[k]eep your entire body in the operator area. Never stick a foot or any part of your body outside the operator area, no matter how slow the truck is moving." (Dkt. 98-11 at p. 4). Another warning advises:

> WATCH YOUR FEET Keep your feet inside the truck and on the pedals at all times. This truck weighs about 3630 kg (8000 pounds) even without a load. You cannot stop or even slow down that much weight with your foot or any part of your body, no matter how slow the truck is moving. A foot or hand caught between the truck and a wall, post or any fixed object will be crushed or even cut off.

(Id. at p. 20). The risk of crush injuries is also addressed in a safety video. (Dkt. 98-12 at p. 5).

As an employee at an Amazon distribution warehouse, McHale completed his required forklift training and understood the warnings advising operators to keep their feet inside the

---

[2] Plaintiffs challenge the science and testing underlying these standards and Crown's reliance on them. (Dkt. 105 at pp. 15-24). However, this dispute is immaterial to the determination that summary judgment is warranted as to Plaintiffs' claim for punitive damages. Further, Plaintiffs contend that Ronald Grisez' averment that the ANSI B56.1 committee rejected proposals to require the addition of doors and the committee's meeting minutes constitute "inadmissible hearsay." (Dkt. 105 at p. 18). Even if Plaintiffs are correct, and Crown is not able to reduce the statements to admissible evidence, *see Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012), summary judgment as to Plaintiffs' claim for punitive damages is warranted.

[3] Plaintiffs' expert, Dr. John Meyer, acknowledges that the entry bar is a "positive feature" of the RC5500, but opines that "it does not help an operator who loses his or her balance" and "had no bearing on Mr. McHale's injury." (Dkt. 105-4 ¶¶ 64-65). Any related factual dispute is immaterial to the determination that punitive damages are unwarranted.

operator compartment. (Id. at pp. 2-8); (Dkt. 105 at p. 2). On March 27, 2015, he was operating an RC5500 when he lost control and collided with the end of a storage rack. (Dkt. 5 ¶¶ 12-15). Prior to the collision, his left foot was moved outside the operator compartment and crushed between the forklift and the storage rack, resulting in injuries. (Id. ¶¶ 15-16).[4]

*Pending Claims*

Plaintiffs bring three claims against Crown: strict products liability (Count One), punitive damages (Count Two), and loss of spousal consortium (Count Three). (Dkt. 5). Essentially, they allege that the RC5500's design is defective and that "reasonable alternative safer design[s]" include a "barrier preventing the operator's leg from leaving the compartment" and "two brake pedals with the operator being trained to use the right pedal for emergency braking." (Id. ¶ 62). Crown moves for summary judgment on all counts, contending that the RC5500 is not defectively designed and punitive damages are unwarranted. (Dkt. 98 at pp. 2-3). In their response, Plaintiffs purport to raise additional claims of negligence and lack of crashworthiness. (Dkt. 105 at p. 4).[5]

## II.   STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the

---

[4] McHale alleges that he lost balance and that the movement was involuntary, while Crown contends that he moved his left leg intentionally. (Dkt. 5 ¶ 15); (Dkt. 90 at p. 10); (Dkt. 105 at pp. 3, 10). The parties' dispute over the cause of McHale's injuries and whether the RC5500 is defectively designed is immaterial to the determination that summary judgment is warranted as to Plaintiffs' claim for punitive damages.

[5] Plaintiffs also filed a "Request for Oral Argument." (Dkt. 106). Because the motion can be resolved based on the record, the request is denied.

evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (citation omitted). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing, by reference to materials on file, that there are no genuine disputes of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted). If the movant adequately supports its motion, the burden shifts to the nonmoving party to show specific facts that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). The evidence presented must be viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012). "Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cty., Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable," *Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986).

### III.   DISCUSSION

In summary, Plaintiffs' claims are limited to strict products liability, punitive damages, and loss of spousal consortium. And summary judgment in Crown's favor is warranted as to Plaintiffs' punitive damages claim, but not Plaintiffs' strict products liability claim.

*Plaintiffs' Attempt to Add Claims*

In their response to Crown's motion for summary judgment, Plaintiffs purport to raise additional claims of negligence and lack of crashworthiness. (Dkt. 105 at p. 4). According to Plaintiffs, "[t]hat negligence and crashworthiness are not individually enumerated as separate

counts in the Amended Complaint is irrelevant. Plaintiffs' expert witnesses' Rule 26 reports and testimony put Crown on notice of the claims being asserted against it, and the grounds on which each claim rests. That is enough." (Id. at p. 4). Crown correctly responds that Plaintiffs' attempt to add new claims is inconsistent with the Federal Rules of Civil Procedure and the scheduling orders in this case. (Dkt. 109 at pp. 1-3).

> As noted in the Case Management and Scheduling Order,
>
> > [m]otions to amend any pleading or a motion for continuance of any pretrial conference, hearing, or trial filed after issuance of this Case Management and Scheduling Order are disfavored. *See* Local Rule 3.05(c)(2)(E) and Local Rule 3.05(c)(3)(D). The deadline for motions to amend pleadings is 10 days after discovery cut-off date.

(Dkt. 16 at pp. 1-2). Upon a joint motion to continue trial and amend the scheduling order, the original deadline to file a motion to amend pleadings was moved to August 18, 2020. (Dkt. 28 at p. 1). Rather than move for leave to amend their complaint to add the claims by the deadline, Plaintiffs purport to raise them, without leave of court, in a response to a motion for summary judgment filed more than four months later. (Dkt. 105). And although the complaint does reference "negligence" and "crashworthiness,"[6] it unambiguously pleads only three claims: strict products liability, punitive damages, and loss of spousal consortium. (Dkt. 5). Plaintiffs provide no authority in support of their contention that their failure to plead the claims is "irrelevant," and that their

---

[6] In their Amended Complaint, Plaintiffs allege that Crown's conduct was "grossly negligent" to support its claim for punitive damages and that, in their claim for loss of spousal consortium, "[a]s a direct and proximate result of [Crown's] wrongful and negligent conduct, [McHale] suffered bodily injury . . . ." (Dkt. 5 ¶¶ 69, 73). And Plaintiffs allege only once, in general terms, that the RC5500 was "not crashworthy and enhanced Alexander McHale's harm." (Id. ¶ 63); *see also Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1346 (11th Cir. 2004) (noting that "enhanced injury" or "crashworthiness" claims "generally occur after an automobile crash, when the failure of some device in the car causes more extensive injuries than would have been suffered had the device worked properly").

6

"Rule 26 reports and testimony" are sufficient to put Crown on notice of the additional claims. As the Eleventh Circuit has explained, "the inclusion of claims in the pretrial stipulation, the mention of them in discovery and the filing of motions concerning [unpled] claims were not a substitute for the factual allegations of a complaint under Federal Rule of Civil Procedure 8(a)." *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1568-69 (11th Cir. 1987); *see also Marshall v. Mayor and Alderman of City of Savannah, Ga*, 366 F. App'x 91, 100 (11th Cir. 2010) ("The district court correctly concluded that allowing [the plaintiff] to assert this claim for the first time in her response to the [defendant's] motion for summary judgment would prejudice the [defendant].").[7]

In summary, Plaintiffs' attempt to add new claims to their Amended Complaint by their response, after the scheduling deadline has passed and without leave of court, fails.

***Strict Products Liability (Count One)***

Plaintiffs allege that the RC5500's design is defective and that "reasonable alternative safer design[s]" include a "barrier preventing the operator's leg from leaving the compartment" and "two brake pedals with the operator being trained to use the right pedal for emergency braking." (Dkt. 5 ¶ 62). Because there are genuine disputes of material fact as to this claim, summary judgment is inappropriate.

---

[7] Plaintiffs' reliance on *Conley v. Gibson*, 355 U.S. 41 (1957), and *Sams v. United Food & Commercial Workers Int'l Union, AFL-CIO, CLC*, 866 F.2d 1380 (11th Cir. 1989), is unavailing. In *Conley*, the Supreme Court explained pleading requirements. 355 U.S. at 47-48. And in *Sams*, which dealt with the characterization of claims to survive a statute of limitations, the defendant had acknowledged in petitions to remove the actions to federal court that the claims against it arose under "alternative" theories. 866 F.2d at 1384-85. Neither case supports the proposition that a complaint pleads separate claims because "Rule 26 reports and testimony" put the defendant on notice of the claims. To the extent Plaintiffs' response could be construed as a request to amend their complaint, the request is not properly brought by a separate motion, in violation of the local rules. *See* Local Rule 3.01.

To prevail on their strict products liability claim, Plaintiffs must prove that Crown manufactured a product with a defect that caused McHale's injuries. *See Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1334 (M.D. Fla. 2015); *see also Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir. 2005). As the Florida Supreme Court has clarified, Plaintiffs are not required to present a "reasonable alternative design," and Florida "adhere[s] to the consumer expectations test, as set forth in the Second Restatement." *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 510-12 (Fla. 2015) (noting that the jury instructions "use both the consumer expectations test and risk utility test as alternative definitions of design defect").[8]

In short, several factual disputes preclude summary judgment on Plaintiffs' strict products liability claim. Specifically, Plaintiffs present evidence demonstrating that the RC5500 has a design defect, including the absence of a door, that caused McHale's injuries. *See, e.g.*, (Dkt. 105-

---

[8] As the Eleventh Circuit has noted:

> The risk utility test balances six factors to determine whether a product's risk outweighs its utility to the consumer . . . . The six factors are: (1) likelihood/gravity of potential injury balanced against its utility, (2) availability of other safe products to meet the same need, (3) obviousness of the danger, (4) public knowledge/expectation of the danger, (5) adequacy of instructions and warnings, and (6) the ability to eliminate/minimize the danger without impairing the product or making it too expensive. The consumer expectations test, meanwhile, focuses on whether the product was more dangerous than the ordinary consumer would reasonably anticipate.

*Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1342 (11th Cir. 2020) (citations omitted).

The parties dispute whether expert testimony is required to prove that a product has a design defect. *See, e.g.*, *Small v. Amgen, Inc.*, 723 F. App'x 722, 726 (11th Cir. 2018) ("Regarding . . . proof of causation, in complex cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required."); *Eghnayem v. Bos. Scientific Corp.*, No. 1:14-cv-024061, 2016 WL 4051311, at *6 (S.D. Fla. Mar. 17, 2016), *aff'd*, 873 F.3d 1304 (11th Cir. 2017) (noting that "[f]ederal courts applying Florida law have held that expert testimony is necessary to prove a product is defective"). In any event, as noted in the order resolving the parties' motions to exclude expert testimony, some of Plaintiffs' experts may testify as to the existence of a design defect on the RC5500. (Dkt. 111).

5 at pp. 130-31); *Crawford*, 977 F.3d at 1342. And although the availability of a reasonable alternative design is not required for their claim, Plaintiffs present evidence showing that an alternative design was available when Crown manufactured the RC5500.[9] (Dkt. 105-5 at pp. 111-17, 127-30). Plaintiffs have also offered evidence challenging the science and testing underlying the applicable safety standards. (Dkt. 105 at pp. 15-16).

In summary, because there are genuine issues of material fact as to Plaintiffs' strict products liability claim, summary judgment is unwarranted.[10] Because the motion is denied as to Plaintiffs' strict products liability claim, it is also denied as to the loss of spousal consortium claim. *See In re Engle Cases*, 767 F.3d 1082, 1087 (11th Cir. 2014) ("[A] loss of consortium claim is 'derivative in nature and wholly dependent on [the injured party's] ability to recover . . . .'").

***Punitive Damages (Count Two)***

Plaintiffs seek punitive damages, alleging that Crown "is aware that hundreds of users of its similar forklifts" have suffered injuries, that it refuses to sell forklifts with doors or modify its designs, and that its "conduct in continuing to sell standup forklifts without safety doors is intentional misconduct" and "grossly negligent." (Dkt. 5 ¶¶ 66-70). However, as Crown correctly

---

[9] As to the brake pedal alternative design, Crown reasons that summary judgment is appropriate because Meyer testified that, absent a rear door, the forklift's design would be defective even if his proposed brake system was implemented, and if there was a door, the design would not be defective without the proposed brake system. (Dkt. 98 at pp. 14-15). However, Crown cites no authority in support of the proposition that if there is evidence that an alternative design is insufficient to remedy a design defect, the alternative design is irrelevant in a products liability case, or that summary judgment as to that alternative design may be granted.

[10] Courts have denied summary judgment on similar strict products liability claims. *See, e.g.*, *Reinard v. Crown Equip. Corp.*, No. C 16-2094-MWB, 2018 WL 547239 (N.D. Iowa Jan. 24, 2018); *Hernandez v. Crown Equip. Corp.*, 92 F. Supp. 3d 1325 (M.D. Ga. 2015).

contends, there is no genuine issue of material fact as to Plaintiffs' claim for punitive damages, and summary judgment in Crown's favor is warranted. (Dkt. 98 at pp. 15-25).

As the Eleventh Circuit explains:

> Under Florida law a plaintiff . . . is not entitled to punitive damages unless she proves, by clear and convincing evidence, that the defendant's conduct . . . amounted to either intentional misconduct or gross negligence. Intentional misconduct occurs when the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage. . . . [G]ross negligence[] occurs when the defendant's conduct is so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

*Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1133 (11th Cir. 2020) (internal citations and quotation marks omitted); Fla. Stat. § 768.72(2). Here, although Plaintiffs raise several factual disputes as to the existence of a design defect and causation, the disputes are not material to the resolution of Plaintiffs' claim for punitive damages. (Dkt. 105 at p. 15). Rather, the record demonstrates that, because Plaintiffs have not shown that Crown's conduct constituted "intentional misconduct" or "gross negligence," punitive damages are not warranted.

First, it is undisputed that there are no commonly accepted standards that require or recommend the addition of a door on the operator compartment of a stand-up forklift, and no manufacturer includes compartment doors as standard equipment. (Dkt. 98-3 ¶¶ 13-17). Rather, an ANSI committee issued a safety standard, adopted by OSHA, noting that forklifts "are designed with open operator compartments to permit easy ingress and egress," that "in the event of an imminent tipover or off the dock accident, the operator should step off and away from the truck," and that "[t]hese actions are intended to reduce the risk of serious injury or death." (Dkt. 98-3 ¶¶

10

1-2, 7); 29 C.F.R. § 1910.178(a)(2); 63 Fed. Reg. 66245, 66242, 66249; (Dkt. 98-7); (Dkt. 98-8 at p. 3).[11] The committee rejected two proposals to require stand-up forklifts to include doors. (Dkt. 98-3 ¶ 3); (Dkts. 98-5, 98-6). Further, to evaluate whether to include a door as a standard feature on its stand-up forklifts, Crown consulted with independent entities, none of which recommended the addition of a door. (Dkt. 98-3 ¶¶ 25-29); (Dkts. 98-13, 98-14, 98-15, 98-16). And to "encourage operators to keep their feet and legs inside the operator compartment," Crown added an entry bar on its stand-up forklifts which, if stepped on, will sound an alarm and slow the forklift to a stop. (Dkt. 98-3 ¶ 23). Last, the RC5500's required training and warnings advise operators of the risks during improper operation of the forklift, including the risk of a left leg crush injury. (Dkt. 98-10); (Dkt. 98-11 at pp. 4, 20); (Dkt. 98-12 at p. 5).[12]

In summary, even if there are factual disputes about the benefits or risks involved with the addition of a door on the RC5500, the possibility that an alternative design might prevent some injuries is insufficient to establish that Crown's conduct constituted intentional misconduct or gross negligence. Accordingly, given the absence of a genuine dispute as to the RC5500's compliance with prevailing safety and industry standards and Crown's actions to evaluate and

---

[11] Plaintiffs challenge Crown's reliance on the OSHA regulations, asserting that the regulations do not apply to side-stance forklifts such as the RC5500. (Dkt. 105 at pp. 19-20). In support, they rely on the former director of OSHA's testimony in a separate case that, when he was director, he was not aware of any regulations instructing the operator of specifically a side-stance forklift during a tip-over. (Dkt. 89-1 at pp. 21-31). Even if true, Plaintiffs do not adequately explain why OSHA's regulations or findings based on stand-up forklifts in general do not apply to the RC5500. In any event, any dispute is immaterial to Plaintiffs' claim for punitive damages.

[12] Although Plaintiffs speculate that Crown's decision not to include doors on the RC5500 is cost-based, they offer no evidence in support of the contention. (Dkt. 105-4 ¶¶ 46-48 (speculating that "[b]ased on the available data, there is no rational justification for not retrofitting Crown's line of standup forklifts with a door other than cost of said retrofitting")). In any event, the dispute is immaterial to the determination that punitive damages are unwarranted.

reduce the risk of left foot injuries, punitive damages are not warranted. *See Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994) (evidence insufficient to support punitive damages where, among other things, product "compli[ed] with both federal regulations and industry practices"); *see also Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 826 (Fla. 1986).

## CONCLUSION

Defendant Crown's Amended Motion for Final Summary Judgment (Dkt. 98) is **GRANTED in part** and **DENIED in part**. Summary judgment on Plaintiffs' claim for punitive damages (Count Two) is granted in favor of Crown. Counts One and Three survive.

**DONE AND ORDERED** this 3rd day of March, 2021.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record